**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CENTERPOINT INTERMODAL LLC;
CENTERPOINT JOLIET TERMINAL
RAILROAD LLC; AMERICAN PRESIDENT
LINES, LTD.; APL LOGISTICS
TRANSPORTATION MANAGEMENT
SERVICES, LTD.; and UNION PACIFIC
RAILROAD COMPANY

            Plaintiffs,

    v.                                Case No. 1:14-cv-4244

THE VILLAGE OF ELWOOD,

            Defendant.

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs CenterPoint Intermodal LLC and CenterPoint Joliet Terminal Railroad LLC ("CenterPoint"), American President Lines, Ltd. ("APL"), APL Logistics Transportation Management Services, Ltd. ("APL Logistics"), and Union Pacific Railroad Company ("Union Pacific") (collectively, "Plaintiffs"), for their Complaint against the Village of Elwood, hereby allege as follows:

## INTRODUCTION

1.      Plaintiffs seek equitable relief to prohibit the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027 (the "Ordinance"), which (i) eliminates through traffic from Walter Strawn Drive to Baseline Road, and also has the effect of: (ii) preventing all trucks weighing 88,000 pounds or more from accessing the Union Pacific's intermodal yard, APL's container facility, or any other location on the northern campus of the CenterPoint Intermodal Center ("CIC"); and (iii) creating unsafe roadway conditions throughout the region by diverting approximately 2,000 trucks a day to other points in the region and nearly tripling the time each of

those trucks are on Illinois roadways. The Village of Elwood made this dramatic change to the status quo, which had been in place for more than a decade, without any understanding of or apparent concern for the safety impact caused to points outside of the Village of Elwood. The Village of Elwood's unilateral actions have caused tremendous harm to Plaintiffs and to Illinois motorists, and must be undone. A true and correct copy of the Ordinance is attached to this Complaint as Exhibit A.

2.     In addition to the increased safety hazards, the Ordinance also unlawfully regulates interstate transportation by rail (and, tangentially, ships on the high seas), unlawfully denies commercial motor vehicles "reasonable access" between the interstate highway system and certain critical facilities in violation of federal law, and represents an unlawful taking of private real estate. In addition to the unlawful nature of the Ordinance, its impact will continue to cause massive traffic backups on Interstate-55, Illinois Route 53, and arterial roads near these highways, will lead to economic chaos, and will adversely impact interstate railroad operations and international shipping operations.

3.     The Village of Elwood's unilateral changes do not promote the safety of the general public, as claimed, but merely push traffic and infrastructure concerns to neighboring municipalities, without any understanding of those implications. This sudden action is particularly arbitrary and unreasonable because an existing Illinois Commerce Commission ("ICC") matter, which the ICC re-opened on February 20, 2014, was scheduled to review the traffic conditions at the intersection of Illinois Route 53 and Walter Strawn Drive. The Village of Elwood, the Illinois Department of Transportation, Union Pacific, and CenterPoint Intermodal LLC are all parties to these ICC proceedings, and have engaged in an evidentiary process to review traffic safety at this exact location.

## PARTIES

4.     The Village of Elwood is an Illinois municipality located in Will County, and is home to the southern campus of the CIC, the unilateral and unlawful regulation of which is at the heart of this dispute.  Although the Village of Elwood began as a small farming community, in recent years it has courted large developers, including CenterPoint, and national and international corporations, such as Bissell, BNSF Railway, Cargill, and Walmart, to develop real estate and conduct business within the CIC.

5.     CenterPoint Intermodal LLC and CenterPoint Joliet Terminal Railroad LLC are real estate development companies with their corporate headquarters located in Oak Brook, Illinois.  They conduct operations at the CIC, located in Will County, Illinois.  CenterPoint Intermodal LLC owns and develops land within the southern campus, annexed into the Village of Elwood.  CenterPoint Joliet Terminal Railroad LLC owns and develops land within the northern campus of CIC, which is part of the City of Joliet.  Both companies work in harmony to operate the nation's largest inland port.

6.     APL is a wholly owned subsidiary of Neptune Orient Lines, a global transportation and logistics company engaged in the shipping industry based in Singapore.  APL's principle place of business in the United States is located in Scottsdale, Arizona.  APL is the world's seventh largest ocean carrier, and provides comprehensive global container shipping services to more than 140 destinations via a massive global network.  APL provides container transportation and supply chain management services through an international shipping network.  APL owns a large tract of real estate in the north campus of the CIC that it developed – at great expense – into an intermodal truck facility to utilize Union Pacific's intermodal facility in Joliet, Illinois, addressed in greater detail below.

7.     APL Logistics is a transportation management company based out of Scottsdale,

3

Arizona. APL Logistics specializes in truck and rail transportation and automotive logistics, and helps design, improve, manage, and optimize customers' domestic trucking networks. Its capabilities include managed transportation services (heavily reliant on trucking), information technology and engineering solutions.

8.     Union Pacific is a Class I railroad, operating an interstate railroad with trains originating, terminating, traversing, or interchanging traffic with other rail carriers or transportation modes, including trucks, over 31,800 miles of track, in 23 states, including Illinois. Union Pacific operates from all major West Coast and Gulf Coast ports to eastern gateways, connects with Canada's rail systems and is the only railroad serving all six major Mexico gateways. Union Pacific's operates in both interstate and international commerce.

9.     One of Union Pacific's main businesses is intermodal shipping, which consists of the interchange of containers of cargo between trucks and trains, for shipment across the country. To conduct its intermodal business, Union Pacific enters into agreements with ocean carriers, such as APL, which facilitate shipments belonging to beneficial cargo owners. As addressed in greater detail below, Union Pacific developed a large parcel of real estate at considerable expense in Joliet, Illinois on the north campus of the CIC.

## **JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil actions arising under the laws of the United States." This action arises under: (i) the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10101 – 11908; (ii) the Surface Transportation Assistance Act ("STAA"), 49 U.S. Code § 31114; (iii) the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501; and (iv) Article I, Section 8, clause 3 of the United States Constitution. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which

grants district courts supplemental jurisdiction over all claims that are "closely related" to claims over which they have original jurisdiction.

11.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c), because the defendant is a resident of this judicial district, and because the events giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

### *The Village Authorizes Creation of the CIC.*

12.     In 2000, the Village of Elwood and CenterPoint agreed that CenterPoint would convert certain real estate, then an abandoned military installation that sat unused as a blighted and dormant Superfund cleanup site, into a large intermodal facility that would connect to rail.

13.     CenterPoint also agreed to perform certain road construction, thereby substantially augmenting transportation and other infrastructure in the Village of Elwood.

14.     The Village of Elwood annexed into its municipal territory certain real estate on which the southern campus of the CIC was to be constructed.

15.     After years of development, CenterPoint is nearly finished with the massive redevelopment project.  CenterPoint has largely converted formerly blighted and unusable land into a world-class transportation hub, and one of the country's largest intermodal facilities, now existing as the northern and southern campuses of the CIC.

16.     The Village of Elwood actively encouraged expansion into the northern campus of the CIC, and never complained about this expansion until well after it was operational and open for business.  As part of the development process, the Village of Elwood permitted CenterPoint to create a comprehensive system of arterial roadways for truck traffic to service both the northern and southern campuses of the CIC, and nearby intermodal yards.  The Illinois Department of Transportation and CenterPoint split the costs for establishing a roadway system

in and around the CIC, some of which is privately owned by CenterPoint. The Village of Elwood did not contribute to the costs of establishing this roadway system. The "Union Pacific and BNSF Intermodal Roadway Jurisdiction Map," which demonstrates the CIC existing roadway system, is attached to this Complaint as Exhibit B.

### *The CIC.*

17.     Today, the CIC is the largest inland port in North America and the largest agricultural hub in the Midwest, and encompasses more than 6,500 acres. It comprises an array of interlocking commercial enterprises whose effective functioning is wholly dependent on continued, reliable access by trucks of various sizes from Walter Strawn Drive to Baseline Road and other nearby roads, including federal and state highways. In addition to intermodal and rail capabilities, the CIC encompasses warehouses and distribution logistic centers from some of the largest companies in the United States, including APL, APL Logistics, Bissel, BNSF Railway, Cargill, Georgia-Pacific, Home Depot, Walmart, and many others. CenterPoint continues to develop real estate in and around the CIC, both in the Village of Elwood and Joliet. The CIC is anchored by the BNSF Logistics Park-Chicago at the southern campus in the Village of Elwood, and Union Pacific-Joliet Intermodal Terminal at the northern campus in the City of Joliet.

18.     The CIC has resulted in more than $7 million per year in new property taxes for the Village of Elwood, and a total investment in the Village of Elwood of more than $800 million. In total, CenterPoint has developed and constructed 9 million square feet of warehouse space, and $100 million of public infrastructure, as part of the CIC.

19.     Between the twin intermodal facilities in the Village of Elwood and Joliet, CenterPoint has helped create approximately 6,500 new jobs. Tens of thousands of construction and trucking jobs also have been created as a result of the creation of these facilities. Over the next 15 years, CenterPoint will invest more than $2 billion in these intermodal facilities, which

will result in more local jobs and more property tax support for these communities. CenterPoint estimates that the investments in these two intermodal facilities will result in as many as 16,000 total jobs.

20.     CenterPoint's investment in the Village of Elwood has directly resulted in improvements including a new village hall, a water and waste water treatment plant, a water tower, street and roadway improvements, a community park, and world-class police and fire operations.

21.     The Village of Elwood's homepage provides that the CIC is "[o]ne of the largest private developments ever undertaken in the United States," required a total investment of nearly $1 billion, and "is expected to create 8,000 new jobs and eventually increase property tax revenue by as much as $27 million per year." A true and correct copy of the applicable Village of Elwood webpage is attached to this Complaint as Exhibit C.

### The Illinois Commerce Commission Undertakes Review of the Walter Strawn Drive Highway-Rail Grade Crossing.

22.     On October 11, 2001, the Village of Elwood filed a petition with the ICC requesting that the ICC authorize "the establishment of a grade crossing at East Access Road" (now called Walter Strawn Drive), instruct Union Pacific to install certain automatic protective devices at that crossing, and "install and maintain a precast concrete surface grade crossing" at that location. A true and correct copy of the Village of Elwood's petition with the ICC is attached to this Complaint as Exhibit D. Union Pacific complied with the order and completed the installation of the crossing.

23.     On February 20, 2014, the ICC granted a motion to re-open that matter in order to address "current operational and safety conditions" at the Walter Strawn Drive grade crossing. The Village of Elwood, the Illinois Department of Transportation, Union Pacific, and

7

CenterPoint all are parties to those proceedings. A true and correct copy of the ICC "Order on Reopening" is attached to this Complaint as Exhibit E.

24.     The ICC and other interested parties currently are immersed in the process of addressing logistical and safety concerns at the Walter Strawn Drive grade crossing. The ICC staff has suggested several potential resolutions to ensure the safety of this crossing, including building a bridge over Walter Strawn Drive that would be funded, in part, by the Village of Elwood.

25.     On two separate occasions, the Village of Elwood filed Motions for Continuance to delay the proceedings in the ICC matter, purportedly to give the parties additional time to explore options for resolving this matter in a manner acceptable to all parties. A true and correct copy of the Village of Elwood's February 18, 2014 Notice and Motion for Extension of Time filed with the ICC is attached to this Complaint as Exhibit F. A true and correct copy of the Village of Elwood's March 28, 2014 Notice and Motion for Extension of Time filed with the ICC is attached to this Complaint as Exhibit G.

26.     The Village of Elwood, however, did not wait for the ICC to act. Instead, the Village of Elwood resorted to unlawful self-help and passed the Ordinance in an attempt to unilaterally regulate interstate traffic and other infrastructure issues at the Walter Strawn Drive grade crossing. In doing so, the Village of Elwood took independent action without consulting the many other parties affected by its unilateral passage of the Ordinance.

### The Village of Elwood Passes the Ordinance, Unilaterally Imposing Severe Restrictions on Truck Traffic on Roads in and Around the CIC.

27.     On May 21, 2014, the Village of Elwood passed the Ordinance, imposing severe restrictions on traffic along certain routes in and around the CIC. The Ordinance provides, in pertinent part:

**Section One:** Beginning May 26, 2014, vehicles travelling southbound on Baseline Road shall be prohibited from making left turns (in an easterly direction) on Walter Strawn Drive off of Baseline Road.

**Section Two:** Beginning May 26, 2014, traffic headed in a westerly direction on Walter Strawn Drive shall be prohibited from turning right (in a northerly direction) onto Baseline Road.

28.   While the Ordinance appears to impose only minor changes, it actually inflicts severe restrictions on traffic along certain routes in and around the CIC, and has had a devastating effect on the economies of businesses affected by these changes in traffic patterns, including those of Plaintiffs.  The Ordinance disrupts the longstanding status quo with respect to truck traffic on certain roads both within and outside of its municipal boundaries, including roads under the sole purview of the Illinois Department of Transportation and outside of the Village of Elwood's authority to regulate and control.

29.   The Ordinance went into practical effect on May 29, 2014, the day the Village of Elwood erected signage and concrete barriers to physically prevent traffic from turning left from Baseline Road onto Walter Strawn Drive, and right from Walter Strawn Drive to Baseline Road. The Ordinance has the effect of eliminating all through traffic, prohibiting all vehicle access to the southern campus of the CIC in the Village of Elwood from the northern campus of the CIC in Joliet, and vice versa.  These changes impact railroad operations and even international shipping operations.

30.   Trucks arriving from Illinois Route 53 and weighing 88,000 pounds or more are not permitted on certain roads in and around the CIC.  As such, the Ordinance also completely bars *all* access to the CIC for all trucks weighing 88,000 pounds or more.

### *Effect of the Ordinance on Union Pacific*

31.   Union Pacific owns and operates five intermodal ramps in Illinois, including at

the Joliet Intermodal Terminal ("JIT") in Joliet, Illinois.  JIT is a rail facility covered by the ICCTA.  49 U.S.C. § 10501(b)(1).

32.     At its intermodal ramps, including JIT, Union Pacific interchanges a variety of goods with trucks that travel to and from non-railroad facilities, delivering and picking up goods to and from customers.

33.     JIT operates twenty-four hours a day, seven days a week.  On an average day, 1,200 trucks enter the facility.  In addition, approximately seven trains arrive at the facility, and approximately six trains depart the facility, each day.

34.     Prior to the implementation of the Ordinance, trucks took one of two routes to access JIT.  One, trucks travelling from Interstate 55 can travel east on Arsenal Road to Baseline Road, and then north on Baseline Road to Millsdale Road, into JIT.  This route was available to all trucks weighing under 88,000 pounds.  Two, trucks travelling from the south on Illinois Route 53 were able to access JIT by turning left onto Walter Strawn Drive, following it to Baseline Road, taking a right, and following it to Millsdale Road, into JIT.  This was the only route into JIT for trucks weighing 88,000 pounds or more.

35.     The Ordinance burdens Union Pacific and its interstate operations, by preventing and severely limiting access to JIT.  The now prohibited and limited access to JIT has rendered Union Pacific's customers either unable to deliver their cargo to JIT, or has placed them in a position where delivery to JIT is both cost and time prohibitive.

36.     When Union Pacific's customers are unable to deliver their cargo to Union Pacific, Union Pacific's operations at JIT are adversely impacted, and the flow of interstate commerce is affected.

### *Effect of the Ordinance on APL and APL Logistics*

37.     In 2012, APL opened the 38-acre Chicago Global Gateway ("CGG"), a full

10

service intermodal yard, in Joliet, Illinois. Intermodal shipping consists of the interchange of containers of cargo between trucks and trains, for rail shipment across the country. Through the Union Pacific facility in Joliet and through an extensive trucking network, and then, in part, through international shipping, APL handles export cargo from Illinois and other states, to Europe and Asia, and carries import cargo for local and national companies. Trucks move hundreds of containers into and out of APL's CGG facility per week. The CGG was strategically built close to the Union Pacific rail terminal, as well as numerous customer warehouses and distribution centers, easily reached by truck.

38. CGG was developed in this location in reliance on truck access to the CIC through Illinois Route 53. Relatedly, APL Logistics relies on access of trucks to the CenterPoint Intermodal Center through Illinois Route 53 to provide competitive logistics services to its customers. Lack of such access renders the land nearly valueless and severely undermines APL's competitive position.

39. Prior to passage of the Ordinance, trucks traveling north on Illinois Route 53 had a single means of ingress to the Village of Elwood and Joliet portions of the CIC: they turned left from Illinois Route 53 onto Walter Strawn Drive, and then turned right onto Baseline Road.

40. After passage of the Ordinance, trucks that formerly accessed the CIC intermodal facilities in Joliet using the Walter Strawn Drive entrance to the CIC and Baseline Road no longer may do so; these trucks must now use alternate (and circuitous) routes which have had a substantial effect on Plaintiffs and others.

41. APL customers and their truckers cannot access the APL facility or the Union Pacific rail yard without incurring substantial additional costs and lost time. APL customers, including major importers and exporters (including exporters of agricultural goods from Illinois

to the rest of the world) cannot tolerate disruption in their supply chains. APL has lost, and is continuing to lose, hundreds of container bookings every day. APL Logistics is similarly affected. APL Logistics' major customers, including OEM automobile manufacturers, cannot risk the disruption to their supply chains caused by the Village of Elwood traffic changes.

42. Approximately 15% of APL's shipment loads are transported using trucks weighing 88,000 pounds or more. As an effective result of the Ordinance, these trucks have no access to APL's facilities at the CIC.

43. The Ordinance is causing, and will continue to cause, drastically increased shipping costs due to logistical tangles and increased mileage required to transport containers. APL and APL Logistics also will be exposed to significantly increased liability risk from accidents as truckers hauling containers are forced to drive on unfamiliar new routes with heavy truck traffic. Just as importantly, by greatly complicating access to the APL facility and the Union Pacific rail yard, the Ordinance has damaged the reputation and good will of APL and APL Logistics.

44. Without access to the CIC entrance from northbound Illinois Route 53, APL would not have purchased and developed this real estate at the CIC facility in Joliet, which it designed and built solely as an intermodal trucking facility.

### *Effect of the Ordinance on CenterPoint*

45. CenterPoint continues to develop real estate in and around the CIC, both at the southern campus in the Village of Elwood, and at the northern campus in the City of Joliet. This real estate is in various stages of development. Whereas certain parcels have buyers or potential buyers, other parcels are still in the early stages of development.

46. Prior to enactment of the Ordinance, CenterPoint (and future buyers or lessees of land being developed by CenterPoint) could easily access real estate at the CIC in both the

Village of Elwood and in Joliet. The Ordinance now blocks access to the Joliet portion of the Intermodal Facility from northbound vehicles traveling on Illinois 53, leaving CenterPoint with access only from Interstate-55, via Arsenal Road.

47. The Ordinance will result in the devaluation of those properties CenterPoint has developed but has not yet sold or leased; the precise monetary nature of this devaluation is difficult, if not possible, to ascertain. The Ordinance also will reduce the scope for future development of CenterPoint's properties in the Village of Elwood. Although the Village of Elwood permitted CenterPoint to engage in substantial commercial development, the restrictions imposed by the Ordinance will prevent CenterPoint from developing, selling, and leasing this real estate to future customers. Other real estate land already in the process of being developed is now drastically reduced in development potential and value. Furthermore, the viability of CenterPoint's plan to contribute $2 billion over the next 15 years will be jeopardized.

48. Without access to the CIC from northbound Illinois Route 53, CenterPoint would not have expanded the CIC facility into Joliet city limits.

## COUNT I – VIOLATION OF THE INTERSTATE COMMERCE COMMISSION TERMINATION ACT ("ICCTA"), 49 U.S.C. § 10501, ET SEQ.
### (UNION PACIFIC)

49. Union Pacific incorporates Paragraphs 1 – 48 as if fully stated herein.

50. The ICCTA, enacted in 1995, vests the Surface Transportation Board ("STB") with "exclusive" jurisdiction over "transportation by rail carriers" and their facilities. 49 U.S.C. § 10501(b).

51. Union Pacific is a "rail carrier," as defined by the ICCTA, 49 U.S.C. § 10102(5), engaged in interstate commerce.

52. JIT is an intermodal facility that falls within the jurisdiction of the STB, under ICCTA. 49 U.S.C. § 10102 (9).

13

53.     When the Ordinance went into effect on May 29, 2014, it cut off all access to JIT for trucks travelling from Illinois Route 53.

54.     When the Ordinance went into effect, it cut off all access to JIT for all trucks weighing 88,000 pounds or more.

55.     The effect of the Ordinance is to prevent trucks from accessing JIT by driving through the Village of Elwood.

56.     The Village of Elwood enacted the Ordinance to prohibit access to JIT. Indeed, the Village of Elwood currently displays signs stating: "Beg[inning] 5–26 No Access to Joliet Intermod[al] Terminal from Walter Strawn."

57.     The Ordinance will result in irreparable harm to Union Pacific by materially and adversely affecting Union Pacific's ability to ship goods in interstate commerce.

58.     The Ordinance will result in irreparable harm to Union Pacific because it interrupts the flow of the movement of goods in interstate commerce.

59.     The Ordinance constitutes an impermissible regulation of "rail transportation" by the Village of Elwood and is preempted under ICCTA.  49 U.S.C. § 10501(b).

60.     Union Pacific has no adequate remedy at law and, unless the relief requested here is granted, Union Pacific, its employees, and its contractors will suffer irreparable injury, loss, and damage as described herein.

WHEREFORE, Union Pacific prays that the Court enter judgment in its favor and:

a.     Adjudge and decree that Village of Elwood Ordinance No. 1027 impermissibly regulates interstate commerce engaged in by Union Pacific, and is preempted by the ICCTA;

b.     Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn

Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

c.  Enter a preliminary injunction and otherwise enjoin (including by permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.  Award Union Pacific its costs and expenses in prosecuting this action;

e.  Award Union Pacific such other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE SURFACE TRANSPORTATION ASSISTANCE ACT ("STAA"), 49 U.S.C. § 31114, ET SEQ. (APL, APL LOGISTICS, AND CENTERPOINT)

61.  APL, APL Logistics, and CenterPoint incorporate Paragraphs 1 – 48 as if fully stated herein.

62.  The STAA bars state and local governments from enacting or enforcing any law that denies to commercial motor vehicles "reasonable access" between the interstate highway system and, *inter alia*, "terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, [or] motor carriers of passengers . . ."  49 U.S.C. § 31114.

63.  Congress's primary objective in passing the STAA was to create uniform standards for commercial motor vehicles utilizing the Interstate and other federal highways.

64.  The STAA contains an express preemption clause, which provides:

A State may not enact or enforce a law denying to a commercial motor vehicle . . . reasonable access between" the Interstate and certain specified destinations. Those specified destinations include "terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers . . .

49 U.S.C. § 31114(a).

65.     APL and APL Logistics operate "commercial motor vehicles," as defined by the STAA, 49 U.S. Code § 31114.

66.     CenterPoint owns certain real estate that it leases to corporations and other entities that operate "commercial motor vehicles," as defined by the STAA, 49 U.S. Code § 31114.

67.     The Village of Elwood has denied reasonable access between highways within the Interstate and other federal highways to trucks owned by APL, APL Logistics, and CenterPoint's tenants and leaseholders.

68.     The Ordinance is not a reasonable restriction on certain truck tractor-semitrailer combinations.

69.     The Ordinance is not based on legitimate safety considerations on certain truck tractor-semitrailer combinations, as any safety considerations are simply shifted to other municipalities.

70.     The Ordinance imposes an effective weight restriction on trucks weighing 88,000 pounds or more from accessing the northern campus of the CIC.

71.     The Ordinance's effective weight restrictions frustrate the goal of the STAA of ensuring reasonable access to the highway.

72.     The Ordinance contravenes the STAA's express preemption clause.  First, the Ordinance effectively denies trucks weighing 88,000 pounds or more any means of access between the interstate highway system the facilities of APL, APL Logistics, and CenterPoint's tenants and leaseholders.  Second, the Ordinance denies all freight vehicles "reasonable" access between the interstate highway system and Union Pacific's facilities by forcing them to undertake an extended detour from their existing route.

73.     The STAA allows for injunctive relief, and specifically permits a district court to

issue a temporary restraining order, preliminary injunction, or permanent injunction to ensure compliance with the statute. 49 U.S.C. § 31115.

74.    APL, APL Logistics, and CenterPoint have no adequate remedy at law, and, unless the relief requested here is granted, APL, APL Logistics, and CenterPoint, their tenants, leaseholders, employees, and customers will suffer irreparable injury, loss, and damage as described herein.

WHEREFORE, APL, APL Logistics, and CenterPoint request that the Court enter judgment in their favor and:

a.    Adjudge and decree that Village of Elwood Ordinance No. 1027 imposes an effective weight decree on trucks operated by APL, APL Logistics, and CenterPoint and its tenants and leaseholders, and is preempted by the STAA;

b.    Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

c.    Enter a preliminary injunction and otherwise enjoin (including by permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.    Award APL, APL Logistics, and CenterPoint their costs and expenses in prosecuting this action;

e.    Award APL, APL Logistics, and CenterPoint such other and further relief as the Court deems just and proper.

## COUNT III – VIOLATION OF THE FEDERAL AVIATION ADMINISTRATION AUTHORIZATION ACT OF 1994 ("FAAAA"), 49 U.S.C. § 14501(C)(1) (APL AND APL LOGISTICS)

75.    APL and APL Logistics incorporate Paragraphs 1 – 48 as if fully stated herein.

76.     The FAAAA has a broad preemptive purpose, and bars state and local governments from enacting or enforcing any law or regulation "related to a price, route, or service of any motor carrier [of property] . . .  with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

77.     The FAAAA provides a limited exception, allowing state and local government bodies to exercise their safety regulatory authority.  49 U.S.C. § 14501(c)(2)(A).

78.     Under the FAAAA, APL and APL Logistics are motor carriers of property.

79.     The Ordinance, while a law of general applicability, significantly impacts APL and APL Logistics by prohibiting them from selecting and using preferred routes to safely, efficiently, and expeditiously transport cargo.

80.     Such interference imposes a significant economic burden on APL and APL Logistics by foisting on them additional and unnecessary, costs.  As a direct and obvious consequence of the Ordinance, the prices that APL and APL Logistics must charge for their services have increased drastically.

81.     The Ordinance is not based on legitimate safety considerations, and thus falls outside of Elwood's safety regulatory authority.  Indeed, the Ordinance increases the risk and likelihood of bodily harm and injury.  Moreover, Elwood's purported safety rationale for adopting the Ordinance is plainly pretextual given the City's course of conduct.  Accordingly, the provision in the FAAAA excluding from its preemptive ambit regulations based on a local government's "safety regulatory authority" is unavailing.

82.     As a result, and as an obvious consequence of the Ordinance, Elwood has impacted APL and APL Logistics' trucking routes and prices, and has burdened a functioning competitive market.  The Ordinance has thus undermined Congress's deregulatory purposes in

adopting the FAAAA.

WHEREFORE, APL and APL Logistics request that the Court enter judgment in their favor and:

a.      Adjudge and decree that Village of Elwood Ordinance No. 1027 imposes a regulation that relates to the price, route, and service of a motor carrier with respect to the transportation of property, and is preempted by the FAAAA;

b.      Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

c.      Enter a preliminary injunction and otherwise enjoin (including by permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.      Award APL and APL Logistics their costs and expenses in prosecuting this action;

e.      Award APL and APL Logistics such other and further relief as the Court deems just and proper.

### COUNT IV – VIOLATION OF THE COMMERCE CLAUSE, U.S. CONSTITUTION ARTICLE I, SECTION 8, CLAUSE 3
**(APL, APL LOGISTICS, AND CENTERPOINT)**

83.      APL, APL Logistics, and CenterPoint incorporate Paragraphs 1 – 48 as if fully stated herein.

84.      States and their subdivisions are not permitted to interfere with interstate commerce by adopting regulations that are excessive in relation to the purported local benefits the regulation is intended to advance.

85.      The Ordinance burdens interstate commerce by unnecessarily and excessively

19

increasing the time it takes to transport goods to and from the CIC, thereby disrupting countless national and international supply and distribution networks, and interfering with international import and export routes. These needless disruptions unnecessarily increase the costs of transporting goods through interstate and international channels.

86. As a direct result of these various burdens on interstate and international commerce and trade, the Ordinance undermines national and international faith and confidence in the State of Illinois' ability to participate in national and international shipping, transportation, import, and export markets.

87. The total safety consequences of the Ordinance are miniscule, if they exist at all. By re-routing significant amounts of truck traffic away from intended and long-used routes, the Village of Elwood has increased safety risks by forcing truck traffic to move through a single chokepoint. The Ordinance does not identify a single specific safety rationale justifying its adoption. Any such rationale is pretextual, and Elwood can point to no empirical evidence tending to establish that continuing to allow truck traffic poses a legitimate safety risk to the public.

88. Any slight safety benefits associated with the Ordinance are outweighed by the immense harm the Ordinance inflicts on interstate commerce.

WHEREFORE, APL, APL Logistics, and CenterPoint request that the Court enter judgment in their favor and:

    a.    Adjudge and decree that Village of Elwood Ordinance No. 1027 impermissibly burdens interstate commerce, and violates Article I, Section 8, clause 3 of the United States Constitution;

    b.    Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right

onto Baseline Road;

c.     Enter a preliminary injunction and otherwise enjoin (including by permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.     Award APL, APL Logistics, and CenterPoint their costs and expenses in prosecuting this action;

e.     Award APL, APL Logistics, and CenterPoint such other and further relief as the Court deems just and proper.

### COUNT V – UNLAWFUL TAKING
### (APL AND CENTERPOINT)

89.     APL and CenterPoint incorporate Paragraphs 1 – 48 as if fully stated herein.

90.     CenterPoint is the property owner of certain real estate in and adjacent to the Village of Elwood, located within the CIC, including certain roads in the northern campus of the CIC, which is depicted in Exhibit B.

91.     APL is the property owner of certain real estate located in the City of Joliet, adjacent to the Village of Elwood, located within the CIC.

92.     The value of the real estate owned by APL and CenterPoint within the CIC is derived in significant part by proximity of this real estate to major roadways and highways, including Illinois Route 53.

93.     The rights of access, ingress, and egress are "valuable property rights.

94.     The Village of Elwood's enactment of the Ordinance greatly reduces the value of real estate owned by APL and CenterPoint because it unreasonably restricts access to and from Illinois Route 53, as well as other roadways.

95.     By unreasonably restricting access to roadways and highways such as Illinois

Route 53, the Village of Elwood has significantly diminished the value of developed and undeveloped real estate owned by CenterPoint within the CIC, and the value of real estate owned by APL within the CIC. This action constitutes a taking without compensation in contravention of the Illinois Constitution.

96.     Because land is unique, the harm to APL and CenterPoint, APL's and CenterPoint's customers, and CenterPoint's tenants, is so substantial that damages are difficult to estimate. As such, APL and CenterPoint are entitled to equitable relief to compensate for the value of this taking without compensation.

WHEREFORE, APL and CenterPoint request that the Court enter judgment in their favor and:

a.     Adjudge and decree that the Village of Elwood has engaged in an unlawful taking of real estate owned by Plaintiffs;

b.     Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

c.     Enter a preliminary injunction and otherwise enjoin (including by permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.     Award CenterPoint its costs and expenses in prosecuting this action;

e.     Award CenterPoint such other and further relief as the Court deems just and proper.

## COUNT VI – PROMISSORY ESTOPPEL
### (CENTERPOINT)

97.     CenterPoint incorporates Paragraphs 1 – 48 as if fully stated herein.

98.     The Village of Elwood permitted CenterPoint to develop the CIC in an area that eventually was annexed into the Village of Elwood.  The Village of Elwood also encouraged CenterPoint to expand development into the northern campus of the CIC, and never complained about this expansion until well after it was operational and open for business.

99.     The Village of Elwood permitted CenterPoint to create a comprehensive system of arterial roadways for truck traffic to service the CIC and nearby intermodal yards.

100.     This comprehensive system of arterial roadways was built for the heaviest truck and motor vehicle traffic volume permitted on Illinois roadways.

101.     CenterPoint paid approximately half of the costs for establishing a roadway system in and around the CIC.  The Illinois Department of Transportation paid for the remaining amount.  The Village of Elwood did not pay for the cost of establishing this roadway system.  CenterPoint still owns certain private roads in the northern campus of the CIC.

102.     The Village of Elwood unambiguously authorized and encouraged CenterPoint to establish this comprehensive system of arterial roadways for truck traffic to service the CIC and nearby intermodal yards, including the creation of an entrance into the CIC from Illinois Route 53.  The Village of Elwood knew this truck traffic would service facilities at the northern and southern campuses of the CIC, in both the Village of Elwood and the City of Joliet.  The Village of Elwood further promised CenterPoint that it, its future tenants, and its successors in interest would have unfettered access to the full and unencumbered use of Strawn Road, Baseline Road, and other nearby roads for access to the CIC.

103.     CenterPoint reasonably relied on the promises made by the Village of Elwood regarding the use of these arterial roads.  CenterPoint relied on this promise when spending massive sums to develop the property and convert an abandoned Superfund cleanup site into a

massive intermodal facility that is an economic powerhouse for the Village of Elwood. CenterPoint also funded approximately half the costs of these roads, which were always intended to permit through traffic between the Village of Elwood and Joliet portions of the CIC. Moreover, for nearly 14 years, the Village of Elwood permitted CenterPoint and various companies located at both the Village of Elwood and Joliet campuses of the CIC to utilize this network of roads.

104.    CenterPoint and other tenants of the CIC began suffering, and will continue to suffer, a detriment based on the Village of Elwood's enactment of the Ordinance.  The Ordinance will reduce the scope for the potential future development, lease, and sale of CenterPoint's existing properties in the Village of Elwood.

WHEREFORE, CenterPoint requests that the Court enter judgment in their favor and:

a.    Adjudge and decree that the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood are estopped from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

b.    Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

c.    Enter a preliminary injunction and otherwise enjoin (including by permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.    Award CenterPoint its costs and expenses in prosecuting this action;

     e.     Award Plaintiffs such other and further relief as the Court deems just and proper.

## COUNT VII – EQUITABLE ESTOPPEL
### (APL, APL LOGISTICS, AND CENTERPOINT)

105.     APL, APL Logistics, and CenterPoint incorporate Paragraphs 1 – 48 as if fully stated herein.

106.     The Village of Elwood permitted CenterPoint to develop the real estate that eventually became the southern portion of the intermodal yards.

107.     The Village of Elwood granted all necessary approvals for development of the CIC within its municipal boundaries, and encouraged that development.

108.     The Village of Elwood permitted CenterPoint to create a comprehensive system of arterial roadways for truck traffic to service the CIC, which specifically includes the intermodal yards.

109.     This comprehensive system of arterial roadways was built for the heaviest truck and motor vehicle traffic volume permitted on Illinois roadways.

110.     The Village of Elwood unambiguously authorized CenterPoint to establish this comprehensive system of arterial roadways for truck traffic to service the CIC. The Village of Elwood knew this truck traffic served facilities at the CIC in both the Village of Elwood and the City of Joliet. The Village of Elwood further promised CenterPoint that it, its future tenants, and its successors in interest would have unfettered access to the full and unencumbered use of Strawn Road, Baseline Road, and other nearby roads for access to the CIC. The Village of Elwood actively encouraged CenterPoint development into the northern campus of the CIC, and never complained about this expansion until well after it was operational and open for business.

111.     Unilaterally, and with no direct notice to APL, APL Logistics, CenterPoint, or other tenants, the Village of Elwood enacted the Ordinance in an attempt to resolve certain

alleged problems associated with truck traffic at the Strawn Road crossing.

112.    The Village of Elwood took these unilateral actions outside the purview of the ICC, and without considering the regional traffic safety implications, the federal statutes that preempt the Ordinance, or the economic consequences of its actions.

113.    With the Ordinance in place, Plaintiffs' trucks, and those of its customers, now must undertake significantly longer routes, and up to one and a half hours of additional travel, to reach their destination.

114.    The Ordinance will cause trucks traveling to the northern campus of the CIC to traverse significantly greater distances, spend more time on the road, sharply reduce the amount of business conducted at the northern campus of the CIC in Joliet, and reduce the scope for the potential future development, lease, and sale of CenterPoint's existing properties in the Village of Elwood and in Joliet.

115.    Plaintiffs will be forced to change their position and their business relationships as a result of the Village of Elwood's unilaterally enacted Ordinance.

WHEREFORE, APL, APL Logistics, and CenterPoint request that the Court enter judgment in their favor and:

a.      Adjudge and decree that the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood are estopped from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

b.      Enter a temporary restraining order and otherwise temporarily enjoin the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

c.      Enter a preliminary injunction and otherwise enjoin (including by

26

permanent injunction) the Village of Elwood and its agents, employees, servants and all those acting in concert with the Village of Elwood from enforcing Village of Elwood Ordinance No. 1027, or otherwise prohibiting vehicles travelling southbound on Baseline Road from making left turns on Walter Strawn Drive, or vehicles heading west on Walter Strawn Drive from turning right onto Baseline Road;

d.    Award APL, APL Logistics, and CenterPoint their costs and expenses in prosecuting this action;

e.    Award APL, APL Logistics, and CenterPoint such other and further relief as the Court deems just and proper.

Dated: June 9, 2014                    Respectfully submitted,

/s/ Michael J. Scotti, III
One of Its Attorneys

Michael J. Scotti, III
Marc H. Kallish
Eric B. Powers
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

*Attorneys for CenterPoint Intermodal LLC and CenterPoint Joliet Terminal Railroad LLC*

/s/ Mark A. Huddle
One of Its Attorneys

Mark A. Huddle
Thomas I. Matyas
Aaron J. Hersh
Edwards Wildman Palmer LLP
225 W. Wacker Drive
Suite 2800
Chicago, IL 60606
(312) 201-2000

*Attorneys for Plaintiff American President Lines Ltd. and APL Logistics Transportation Management Services, Ltd.*

/s/ Elizabeth A. G. Shansky
One of Its Attorneys

Elizabeth A. G. Shansky
Tanya E. Springman
Union Pacific Railroad
101 North Wacker Drive
Room 1920
Chicago, IL 60606
(312) 777-2056

*Attorneys for Plaintiff Union Pacific Railroad*